IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. MEDHURST, | ) | Case No. 5:25-cv-01862-RJS |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION AND** |
| SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Laura M. Medhurst ("Medhurst"), seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under title XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). The parties agree that the Administrative Law Judge ("ALJ") failed to reach a conclusion supported by substantial evidence at Step Five, and because there remains an issue of facts on the record, I order that the Commissioner's final decision denying Medhurst's application for SSI be vacated and that Medhurst's case be remanded to resolve the vocational contradiction on probationary periods.

## II.     Procedural History

Medhurst filed for SSI on June 12, 2023, alleging a disability onset date of November 1, 2022. (Tr. 233-46). The claims were denied initially and on reconsideration. (Tr. 81, 90). She then requested a hearing before an ALJ. (Tr. 122). Medhurst (represented by counsel) and a

vocational expert ("VE") testified before the ALJ on November 7, 2024. (Tr. 35-63). On November 25, 2024, the ALJ issued a written decision finding Medhurst not disabled. (Tr. 14-29). The Appeals Council denied her request for review on July 15, 2025, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; see 20 C.F.R. §§ 404.955, 404.981).

Medhurst timely filed this action on September 8, 2025. (ECF Doc. 1). She asserts that the ALJ erred at Step Five by contradicting the VE testimony and concluding that occupations were available under the final RFC, and she asks this Court to award benefits. (*Id.* at p. 7, 9). In the initial reply brief, the Commissioner concedes the ALJ's error and asks the case to be remanded for further proceedings. (ECF Doc. 11 at p. 3).

### III.     Evidence

#### A.     Personal, Educational, and Vocational Evidence

Medhurst was 33 years old on the alleged onset date, making her a younger individual according to Agency regulations. (Tr. 82). She graduated from high school. (Tr. 27). She has no past relevant work. (*Id.*).

#### B.     Medical Evidence

From at least September 28, 2021, through October 1, 2024, Medhurst visited Coleman Professional Services to receive treatment for her mental health conditions. (Tr. 550-51, 699). She was diagnosed with and receiving treatment for schizoaffective disorder and obsessive-compulsive disorder. (Tr. 555, 668, 733, 763). The providers also noted her paranoia, abnormal attention/concentration, and confused thinking, as well as depressive symptoms. (Tr. 518, 520, 561, 675, 720). During this period, Medhurst also visited the crisis center twice and underwent pre-hospital screening, with the provider noting anxiety, depression, inattention, impulsivity, and vague suicidal ideation. (Tr.716, 718, 720, 721).

During this period, Medhurst also attended two telehealth sessions with Ever Well Community Health. (Tr. 647, 792). She was diagnosed with major depressive disorder, generalized anxiety disorder, autism spectrum disorder, attention-deficit hyperactivity disorder, and post-traumatic stress disorder, as well as a severe stimulant use disorder in early remission, an unspecified caffeine-related disorder, and a tobacco use disorder. (Tr. 654, 800, 801).

### C. Medical Opinion Evidence

#### 1. State Agency Reviewing Opinion Evidence

On September 14, 2023, state agency reviewing psychologist Deryck Richardson, Ph.D., opined that Medhurst has moderate limitations on understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. (Tr. 85). Dr. Richardson also noted severe schizophrenia or other psychotic disorder, severe depressive, bipolar, or related disorder, severe anxiety and obsessive-compulsive disorder, severe alcohol addiction disorder, and severe attention-deficit/hyperactivity disorder. (*Id.*). Dr. Richardson adopted the Mental RFC from a prior ALJ decision on October 14, 2021, which stated that Medhurst could perform simple, routine tasks that do not involve arbitration, negotiation, or confrontation, that she cannot direct the work of others or be responsible for others' safety or welfare, that she cannot perform piece rate or assembly line work, and that she can only tolerate occasional interactions with others. (Tr. 71, 87). State agency reviewing psychologist Janet Souder, Psy.D., confirmed this Mental RFC on January 5, 2024. (Tr. 96).

#### 2. Medical Source Statement

Bryan Krabbe, Psy.D., conducted a clinical interview of Medhurst on August 14, 2024. He reported mild impairment to her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. (Tr. 804). He also reported

3

moderate impairment in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (*Id.*). He also found Medhurst's ability to interact appropriately with supervisors and co-workers moderately impaired, as well as her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 805). He also noted her below average attention, concentration, intelligence quotient, and delayed memory index. (Tr. 804-05).

### D. Administrative Hearing Evidence

VE Lynn Smith testified before an ALJ on November 7, 2024. (Tr. 58-62). The ALJ asked the VE to consider an individual of the same age, educational background, and work experience as Medhurst who has no exertional limitations, but has the following non-exertional limitations: the individual can understand and remember only simple instructions, can attend to and carry out routine repetitive tasks, can occasionally interact with others on a superficial basis, and cannot perform piece-rate or assembly line work. (Tr. 58-59). The VE opined that such an individual could work as a kitchen helper, with 55,000 jobs nationally, DOT 318.687-010; as a laundry worker, with 10,000 jobs nationally, DOT 361.685-018; and as a cook helper, with 60,000 jobs nationally, DOT 317.687-010. (Tr. 59).

Under questioning from Medhurst's attorney, the VE provided the following testimony on probationary periods:

> Q: Now when we're talking about unskilled work in general here, do these jobs have a probationary period?
>
> A: Yeah, usually in the beginning it's anywhere from a week or two to 30 days.
>
> . . .
>
> Q: Okay. And during those first couple of weeks up to 30 days you mentioned, for those unskilled positions would the individual experience frequent and/or ongoing

4

contact with coworkers and supervisors in order to learn how to perform the tasks involved with the work?

A: Yes, I would say so.

(Tr. 60).

### IV.    The ALJ's Decision

In his decision dated November 24, 2025, the ALJ made the following findings:

1.      The claimant has not engaged in substantial gainful activity since June 12, 2023, the application date (20 CFR 416.971 *et seq.*).

2.      The claimant has the following severe impairments: depression, bipolar disorder, adjustment disorder, schizoaffective disorder, obsessive-compulsive disorder (OCD), social anxiety disorder, attention-deficit hyperactivity disorder (ADHD), and history of alcohol abuse (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand and remember simple instructions. She can attend to and carry out routine, repetitive tasks. The claimant can occasionally interact with others on a superficial basis (i.e. cannot perform tasks involving arbitration, confrontation, negotiation or responsibility for the safety or welfare of others). She cannot perform piece rate or assembly line work.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on May 29, 1990 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 12, 2023, the date the application was filed (20 CFR 416.920(g)).

(Tr. 20-28).

## V. Law & Analysis

### A. Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1. whether the claimant is engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or combination of impairments;

3. if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. if not, whether the claimant can perform their past relevant work in light of his RFC; and

5. if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Standard of Review

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g);

6

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing

7

court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at \*6 (E.D. Mich. Nov. 1, 2012); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007).

**VI.     Discussion**

Medhurst argues that the ALJ erred at Step Five by finding that other occupations in the national economy were available under the final RFC. (EFC Doc. 9, p. 7). Medhurst contends that the VE's testimony stated that the ALJ's RFC determination limited potential occupations to unskilled work, that all unskilled occupations require probationary periods from one week up to thirty days, and that those probationary periods require frequent or ongoing contact with coworkers and supervisors. (*Id.*). Because such contact would exceed the RFC, Medhurst argues that the VE testified that there were no occupations available in the national economy. (*Id.* at pp. 7-8). Therefore, Medhurst claims there are no remaining factual issues left to be determined, and that remanding for further proceedings is unnecessary. (*Id.* at p. 9). Therefore, Medhurst asks this Court to reverse the ALJ's decision, award benefits, and remand the case to determine the extent of those benefits. (ECF Doc. 12, p. 5).

The Commissioner concedes that the ALJ's Step Five analysis was not based on substantial evidence and asks this Court to remand the case for further proceedings. (ECF Doc. 11, p. 3). The Commissioner contends that the VE offered conflicting evidence about the availability of jobs given Medhurst's RFC, and that this factual conflict was never resolved in the evidence. (*Id.* at pp. 3-4). The Commissioner therefore argues that there remains a factual issue which prevents this Court from immediately awarding benefits, and that a remand for further administrative proceedings is required. (*Id.* at pp. 4, 6).

While the Sixth Circuit has not addressed whether probationary periods are relevant to the analysis at Step Five, courts in the Northern District of Ohio have agreed with Second Circuit precedent that "[t]he ability to complete a probationary period is . . . tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite of the ability to engage in substantial gainful activity." *Szcepanski v. Saul*, 946 F.3d 152, 159 (2d Cir. 2020); *See Loy v. Comm'r of Soc. Sec.*, No. 5:24-cv-02239, 2025 WL 2611407 at *7 (N.D. Ohio Sep. 10, 2025), *report and recommendation adopted*, No. 5:24-cv-2239, 2025 WL 3229608 (N.D. Ohio Nov. 18, 2025); *Basett v. Comm'r of Soc. Sec.*, No.5:24-cv-1600, 2025 WL 798791 at *5 (N.D. Ohio Mar. 13, 2025), *report and recommendation adopted*, No. 5:24-cv-01600, 2025 WL 1068013 (N.D. Ohio Apr. 9, 2025); *Follen v. Comm'r of Soc. Sec.*, No. 5:24-cv-01719, 2026 WL 1382438 at *4 (N.D. Ohio May 18, 2026).

The Commissioner concedes that probationary periods are relevant and that the ALJ failed to adequately consider the VE testimony on the matter. (ECF Doc. 11, p. 3). It is undisputed by the parties that the VE testimony on probationary periods created a conflict in the evidence which the ALJ did not sufficiently address. (*Id.*; ECF Doc. 9, p. 7).

However, the parties dispute the degree to which the VE testimony on probationary periods contradicted the finding that employment was available; if the VE testimony on probationary periods is so unequivocal that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," then an immediate award of benefits is appropriate. *Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *Bassett*, 2025 WL 798791 at *4. If the VE testimony falls short of this, then the ALJ should have an opportunity on remand to resolve the contradiction. *Faucher*, 17 F.3d at 176.

9

District courts have found the award of benefits appropriate when the VE clearly states that all relevant jobs have probationary periods that exceed the plaintiff's RFC. *See McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761 at *3 (S.D. Ohio Jan. 8, 2019) (awarding benefits where "the VE testified that a person who could not participate in those tasks—*i.e.*, could not engage in teamwork or shared tasks—would not be able to 'weather the probationary period of these [identified] unskilled jobs'"), *report and recommendation adopted*, No. 3:17-cv-424, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019); *McAfee v. Comm. of Soc. Sec.*, No. 3:19-cv-125, 2020 WL 5810004 at *4 (S.D. Ohio Sept. 30, 2020) (awarding benefits where "[t]he VE conceded . . . that an individual (such as Plaintiff) who could not withstand any close, over-the-shoulder supervision would not be able to complete the probationary period of [the identified] jobs").

The Northern District of Ohio has found that awarding benefits is not appropriate where the VE testimony is silent on whether the occupations identified exceed the plaintiff's RFC. *See Bassett*, 2025 WL 798791 at *6 (denying the award of benefits where the VE was not asked "if a person with the limitations described could 'weather the probationary period,' or language to that effect, of the three identified jobs"); *Loy*, 2025 WL 2611407 at *8 (denying the award of benefits because the VE testified that the length of training periods vary by employer and "did not testify about the length of training periods for the cleaner/housekeeping, routing clerk, and marker jobs"); *Owens v. Comm'r of Soc. Sec.*, no 4:23-cv-1288, 2024 WL 553954 at *5 (N.D. Ohio Jan. 5, 2024) (denying the award of benefits because "the vocational expert testified generally about unskilled jobs and not the probationary periods for the jobs gluer, garment folder, and inspector and hand packager"); *Follen*, 2026 WL 1382438 at *6 (denying the award of benefits because "the VE did not testify whether the particular jobs she identified (merchandise marker, routing

clerk, cleaner/housekeeper) have required training periods, if their training periods are shorter than the general 'two to three weeks max,' or, most critically, if a person limited to occasional interactions with others could make it through those training periods").

Under this approach, the instant case is not eligible for an award of benefits at this stage. During cross-examination, Medhurst's counsel asked, "Now when we're talking about unskilled work in general here, do these jobs have a probationary period?" (Tr. 60). The VE's response was likewise general: "Yeah, usually in the beginning it's anywhere from a week or two to 30 days." (*Id.*). Counsel then asked, "during those first couple of weeks up to 30 days you mentioned, for those unskilled positions would the individual experience frequent and/or ongoing contact with coworkers and supervisors in order to learn how to perform the tasks involved with the work?" (*Id.*). The VE answered in the affirmative. (*Id.*). The VE did not mention, much less rule out, the kitchen helper, laundry worker, or cook helper positions identified she earlier identified as available. (Tr. 59-62).

The Plaintiff cites cases from outside this district which have found benefits rewardable without this express language. (ECF Doc. 9, p. 10; ECF Doc. 11, p. 5); *See Matthew H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-0241, 2022 WL 2255376 (S.D. Ohio June 23, 2022); *Harrison v. Comm'r of Soc. Sec.*, No. 24-1067-STA-JAY, 2025 WL 958177 (W.D. Tenn. Mar. 31, 2025); *Sandy C. v. Kijakazi*, No. 4:21-cv-00173, 2023 WL 2133935 at *5 (S.D. Ind. Feb. 21, 2023); *Potrebic v. Berryhill*, No. 217-cv-00462, 2019 WL 1397477 (N.D. Ind. Mar. 27, 2019). However, the Plaintiff has not submitted any reasons why this Court should not follow Northern District of Ohio precedent. Therefore, per this district's precedent, I find that essential factual issues remain in the record, and therefore this case is remanded for further administrative proceedings, including a hearing to resolve the contradiction in the record.

11

## VII.    Conclusion

For the foregoing reasons, I order the Commissioner's final decision denying Medhurst's application for SSI be vacated and that the case be remanded under Sentence Four of § 405(g) with the instruction that on remand, the Agency hold a new hearing to resolve the vocational issue of probationary periods.

Dated: June 18, 2026

Reuben J. Sheperd
United States Magistrate Judge

12